(No. 93628.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARCELO LEDESMA *et al.* (Guadalupe Jose Perez *et al.*, Appellants).

*Opinion filed June 19, 2003.*

Steven L. Blakely, of Acton & Snyder, Jeffrey Clapper, of Clapper & Clapper, and Thomas J. Mellen II, all of Danville, for appellants.

James E. Ryan, Attorney General, of Springfield, and Larry S. Mills, State's Attorney, of Danville (Joel D. Bertocchi, Solicitor General, and Lisa Anne Hoffman, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following simultaneous traffic stops of two vehicles resulting from an anonymous 911 tip and police observations based on that tip, defendants were charged with delivery of cannabis in violation of section 5(f) of the Cannabis Control Act (Act) (720 ILCS 550/5(f) (West 1998)) and possession of cannabis in violation of section 4(f) of the Act (720 ILCS 550/4(f) (West 1998)). The circuit court of Vermilion County granted a defense motion to suppress as evidence drugs found in one of the vehicles. The appellate court reversed (327 Ill. App. 3d 805), and we granted leave to appeal (177 Ill. 2d R. 315). We are asked to determine whether the evidence should have been suppressed because the traffic stops in question were based on information obtained in violation of state eavesdropping statutes, federal wiretapping statutes, and constitutional protections against unreasonable searches and seizures contained in the United States and Illinois Constitutions. We are also asked to determine whether the police search of one of the vehicles was conducted pursuant to the driver's consent.

## BACKGROUND

Between 11:30 p.m. and 12 a.m. on September 18,

1998, Tilton police officers received a radio dispatch that an anonymous 911 caller reported a "possible drug deal" was to take place in the parking lot of an Aldi store on Georgetown Road in Tilton, Illinois. The anonymous caller stated that he had overheard a cellular phone conversation on his police scanner. The caller stated that one of the vehicles involved in the transaction would be teal-colored. The officers positioned themselves in a parking lot across the road from the Aldi store. As officers watched the Aldi parking lot, a maroon automobile drove into the Aldi lot and then into the parking lot of an adjacent gas station. Officers observed the maroon vehicle pull alongside a parked teal vehicle and stop. The headlights on both vehicles were turned off and they briefly remained parked beside each other. The vehicles then left the gas station parking lot simultaneously and traveled north on Illinois Route 1, where another police vehicle was waiting. Police pulled over the vehicles along Route 1. Marcelo Ledesma was the driver of the teal vehicle and defendant Jose Perez was his passenger. Richard W. Roth, Jr., was the driver of the maroon vehicle and Jeremy A. Edwards was his passenger. After stopping Ledesma's vehicle, police officer Steve Cornett informed Ledesma that he had reason to believe he had engaged in drug-related activity and asked if there were any drugs or alcohol in the vehicle. Ledesma replied that there were none. Officer Cornett then inquired if Ledesma had any objections to Officer Cornett "taking a look" in the vehicle. Ledesma stated he had no objections. After indicating his consent to the search and exiting the vehicle along with Perez, Ledesma inquired into the purpose of the search and, in the words of Officer Cornett, was "kind of hem-hawing around." Ledesma did not expressly withdraw his consent to the search. Officer Cornett's narcotics detection canine "indicated" the presence of narcotics on Perez's legs and the vehicle

doors. The canine also indicated on the seat and a bag found on the front passenger floorboard. Officer Cornett opened the bag and discovered what appeared to be a substantial amount of cannabis. Tests confirmed that the substance was marijuana weighing in excess of 2,200 grams.

Upon stopping the vehicles, Officer David Phillips approached the maroon vehicle and asked the driver, Roth, for a driver's license. Roth stated that his license had been revoked and he was immediately placed under arrest for driving with a revoked license. While seated in the front seat of the squad car, Roth advised Officer Phillips that his bond money was underneath the front seat and that he wanted Edwards to get it for him. While Officer Mike Schull reached in to get the bond from under the seat, Officer Phillips, who was standing beside Edwards outside the car, noticed that a large amount of cash had fallen out from underneath the driver's seat. Police discovered $5,000 in cash laying loose underneath the seat.

On September 21, 1998, Ledesma, Perez, Roth, and Edwards were charged with delivery of cannabis in violation of section 5(f) of the Act (720 ILCS 550/5(f) (West 1998)) and possession of cannabis in violation of section 4(f) of the Act (720 ILCS 550/4(f) (West 1998)). Defendants moved to suppress all evidence obtained as a result of the traffic stop. The trial court granted the motion to suppress, holding that a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) was not warranted because there was insufficient independent corroboration of the tip and that police had exceeded Ledesma's consent to search his vehicle. The appellate court reversed, holding that the stop was permissible because there was no violation of state or federal statutes or constitutional protections against unreasonable searches and seizures. 327 Ill. App. 3d at 810-15. The

court also held that the search did not exceed the scope of Ledesma's consent. 327 Ill. App. 3d at 815. This court has jurisdiction pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315).

## ANALYSIS

A trial court's ruling on a motion to suppress evidence is subject to reversal only if it is manifestly erroneous. *People v. Mitchell*, 165 Ill. 2d 211, 230 (1995). As both parties note, *de novo* review is appropriate, however, when neither facts nor credibility of witnesses is questioned. *Mitchell*, 165 Ill. 2d at 230. Although the parties may have varying interpretations of the motives of the anonymous caller or the conversation that took place between Ledesma and Officer Cornett, neither party has identified any disputed facts. Therefore, we review *de novo* the suppression of the evidence.

### The Anonymous Tip and Propriety of the Stop

Defendants argue that the evidence should have been suppressed because the sole basis for the traffic stop was a "vague and anonymous" 911 call that indirectly provided police with information obtained in violation of state eavesdropping statutes, federal wiretapping legislation, and constitutional protections against unreasonable searches and seizures.

### State Law

Defendants argue that evidence seized during the stop should be suppressed pursuant to the Illinois eavesdropping statute (720 ILCS 5/14—1 *et seq.* (West 1998)). Section 14—5 of the Criminal Code of 1961 (Code) provides:

> "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor in any grand jury proceedings; provided, however, that so much of the contents of an alleged unlawfully intercepted, overheard or

recorded conversation as is clearly relevant, as determined as a matter of law by the court in chambers, to the proof of such allegation may be admitted into evidence in any criminal trial or grand jury proceeding brought against any person charged with violating any provision of this Article." 720 ILCS 5/14—5 (West 1998).

Section 14—2 of the Code provides in part:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation ***; or

(b) Uses or divulges *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." 720 ILCS 5/14—2 (West 1998).

Section 14—3(d) contains a number of exemptions to the activities prohibited under section 14—2. Section 14—3 exempts:

"(d) Recording or listening with the aid of any device to any emergency communication made in the normal course of operations by any federal, state or local law enforcement agency or institutions dealing in emergency services, including, but not limited to, hospitals, clinics, ambulance services, fire fighting agencies, any public utility, emergency repair facility, civilian defense establishment or military installation[.]" 720 ILCS 5/14—3(d) (West 1998).

The Illinois eavesdropping statute defines "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14—1(d) (West 1998).

Section 114—12(b) of the Code permits the bringing of a motion to suppress evidence illegally seized and states that "the burden of proving that the search and seizure were unlawful shall be on the defendant." 725 ILCS 5/114—12(b) (West 1998). In *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003), this court stated:

"The defendant bears the burden of proof at a hearing on a motion to suppress. [Citations.] A defendant must make

a *prima facie* case that the evidence was obtained by an illegal search or seizure. [Citation.] If a defendant makes a *prima facie* case, the State has the burden of going forward with evidence to counter the defendant's *prima facie* case. [Citation.] However, the ultimate burden of proof remains with the defendant. [Citation.]"

Assuming, *arguendo*, that defendants met their initial burden of making a *prima facie* showing in this case, we find that the State met its burden of going forward. Police responded to a call from the dispatch office that a tip had been received stating that a drug transaction was to take place involving a specific type of vehicle at a specific location. The officers' observations corroborated the information reported by the tipster. The informant stated that he overheard the cellular conversation while listening to a police scanner. Police scanners are devices designed to "[r]ecord[ ] or listen[ ] *** to any emergency communication made in the normal course of operations by any federal, state or local law enforcement agency or institutions dealing in emergency services ***." 720 ILCS 5/14—3(d) (West 1998). Such devices are specifically exempt from the eavesdropping statute by section 14—3(d) of the Code (720 ILCS 5/14—3(d) (West 1998)). We find nothing in the record to indicate that the Illinois eavesdropping statute was violated or that the tipster's interception of the conversation was anything but inadvertent. The factual content of the tip was sufficiently corroborated through the officers' observations.

## Federal Law

Defendants also contend that all evidence seized during the stop should be suppressed pursuant to section 2515 of the federal "wiretap" statute. 18 U.S.C. § 2515 (1994). Section 2515 prohibits the use of intentionally intercepted wire or oral communications as evidence in criminal or civil proceedings. It provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication

and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [119]." 18 U.S.C. § 2515 (1994).

A person violates the provisions of chapter 119 when he or she:

"(a) intentionally intercepts[ ] [or] endeavors to intercept *** any wire, oral, or electronic communication;

***

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]" 18 U.S.C. §§ 2511(1)(a), (1)(c) (1994).

The federal wiretap statute is similar to the Illinois statute and defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2) (1994).

Defendants argue that the possession of a police scanner is illegal under federal law pursuant to section 2512. 18 U.S.C. § 2512(1)(b) (1994). Therefore, the mere fact the informant was in possession of a device capable of intercepting a cellular communication indicates that he or she intended or endeavored to intercept the communication in question. Section 2512 states, in part:

"(1) Except as otherwise specifically provided in this chapter, any person who intentionally—

***

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the sur-

reptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce *** ***

shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 2512(1)(b) (1994).

However, as previously discussed, possession of a device, such as a police scanner, that is designed to "[r]ecord[ ] or listen[ ] *** to any emergency communication made in the normal course of operations by any federal, state or local law enforcement agency or institutions dealing in emergency services" (720 ILCS 5/14—3(d) (West 1998)) is a lawful activity in Illinois. Further, such activity is permissible under the federal statute, as well. Section 2511(2)(g)(ii)(II) states, "It shall not be unlawful under this chapter or chapter 121 of this title for any person *** to intercept any radio communication which is transmitted *** by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public[.]" 18 U.S.C. § 2511(2)(g)(ii)(II) (1994). Our federal courts have not interpreted federal wiretap legislation to include a ban on police scanners. While it is possible that police scanners may occasionally intercept cellular telephone communications, and other devices may exist that are specifically designed for the purpose of intercepting cellular telephone communications or that may have the capability of inadvertently intercepting cellular calls even though not designed for that use (*e.g.* a monitor for a baby's nursery), it cannot be said that police scanners are "primarily useful for the purpose of the surreptitious interception" (18 U.S.C. § 2512(1)(b) (1994)) of cellular telephone communications.

That is not to say, however, that cellular telephone conversations are not entitled to a measure of protection

from surreptitious or intentional interception. The State relies on *People v. Wilson*, 196 Ill. App. 3d 997, 1009-10 (1990), in support of its argument that the cellular telephone conversation in this case was not protected by state eavesdropping legislation or federal wiretap laws. *Wilson* held that a cordless telephone conversation intercepted by a radio scanner was not protected from disclosure, and that any evidence derived from the intercepted call was admissible in subsequent court proceedings. Defendants argue that the *Wilson* court's determination that the federal wiretapping statute does not protect cellular telephone conversations has been superseded by subsequent amendments to the federal legislation. The federal wiretap statute was amended in 1994 to include cordless telephone conversations within its protections. Public Law No. 104—132, section 202(a)(1), struck out the provision contained in section 2510(1) (18 U.S.C. § 2510(1) (1994)), which had excluded cordless telephone communications from the definition of a "wire communication," the interception and dissemination of which is prohibited under section 2511 (18 U.S.C. § 2511 (1994)). See H.R. Rep. No. 103—827 at 10, 17-18, 30 (1994), reprinted in 1994 U.S.C.C.A.N. 3489, 3490, 3497-98, 3510. The Supreme Court has held that the amendments extend protections to cellular telephone conversations. *Bartnicki v. Vopper*, 532 U.S. 514, 149 L. Ed. 2d 787, 121 S. Ct. 1753 (2001). Thus, since the interception of the cellular call in this case took place long after the 1994 amendments, the State's argument that cellular telephone conversations are not protected under federal law must fail.

However, a complete reading of section 2511 leads us to conclude that federal law was not violated in this case. Section 2511(1)(a) provides that a person violates federal eavesdropping laws when he "*intentionally* intercepts[ ] [or] *endeavors to intercept* \*\*\* any wire, oral, or electric

communication." (Emphases added.) 18 U.S.C. § 2511(1)(a) (1994). Defendants have failed to establish that the actions of the informant in this case were surreptitious or that the interception of the telephone conversation was intentional. See *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993) (to find intentional interception of telephone conversations of third parties without their knowledge or consent, jury must find that the act was deliberate and purposeful, rather than product of mistake or accident); *Citron v. Citron*, 539 F. Supp. 621, 626 (S.D.N.Y. 1982) (liability for unlawful interception of telephone conversations requires showing that interceptor acted in intentional or reckless disregard of legal obligations), *aff'd*, 722 F.2d 14 (2d Cir. 1983). Therefore, we find no violation of federal law requiring the suppression of evidence gathered as a result of the traffic stops.

### Constitutional Protections Against Unreasonable Search and Seizure

Defendants argue that the trial court's suppression of evidence seized from their vehicles should be affirmed because the police lacked sufficient probable cause to conduct the stops. Defendants argue that an investigatory stop may not be premised solely upon an "uncorroborated" and "vague" anonymous tip.

The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The fundamental purpose of these provisions is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996). We must carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable government intrusion. *People v. Tisler*, 103 Ill. 2d 226, 245 (1984); *People v. Smith*, 95 Ill. 2d 412, 422 (1983).

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. "Although the officer need not have probable cause to arrest or search in order to stop and frisk [citations], he must have knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime." *People v. Smithers*, 83 Ill. 2d 430, 434 (1980), citing *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362, 99 S. Ct. 2637, 2640-41 (1979); *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *Beck v. Ohio*, 379 U.S. 89, 96, 13 L. Ed. 2d 142, 148, 85 S. Ct. 223, 228 (1964). To justify a temporary detention, the police officers must point to specific, articulable facts that, when considered with natural inferences, make the intrusion reasonable. *Smithers*, 83 Ill. 2d at 436. We have previously held that a totality-of-circumstances approach will achieve a fairer balance between public and private interests. *Tisler*, 103 Ill. 2d at 245. "The central issue is *** whether the information, taken in its totality, and interpreted not by technical legal rules but by factual and practical commonsense considerations, would lead a reasonable and prudent person to believe that the person stopped had committed an offense." *People v. Adams*, 131 Ill. 2d 387, 396-97 (1989).

Where an informant's tip is received by telephone, it may form the basis for a lawful *Terry* stop, but the information must bear some indicia of reliability, and the information upon which the police act must establish the requisite quantum of suspicion. *People v. Ertl*, 292 Ill. App. 3d 863, 869 (1997). Where the reliability of the information obtained from an anonymous informant cannot be easily corroborated and no other suspicious

circumstances are known to the police, a stop may be found unwarranted. *Ertl*, 292 Ill. App. 3d at 869. However, substantial corroboration not only establishes an informant's veracity, but also supports an inference that an informant obtained his story reliably. *People v. Williams*, 147 Ill. 2d 173, 210 (1991); *Tisler*, 103 Ill. 2d at 251. "Whether such corroboration consists of innocent or incriminating activity is not the question. Instead, the proper focus is ' "whether the actions of the suspects, whatever their nature, give rise to an inference that the informant is credible and that he obtained his information in a reliable manner." ' " *Williams*, 147 Ill. 2d at 210, quoting *Tisler*, 103 Ill. 2d at 251, quoting *Illinois v. Gates*, 462 U.S. 213, 269, 76 L. Ed. 2d 527, 568, 103 S. Ct. 2317, 2349 (1983) (White, J., concurring).

Like many issues involving constitutional protections against unreasonable searches and seizures, the reliability of a tip and the propriety of police action in response to that tip are often closely decided issues. For example, defendants rely heavily on two cases from our appellate court in which tips from anonymous callers were found to be insufficient bases for making investigatory stops. In *People v. Messamore*, 245 Ill. App. 3d 627 (1993), the defendant was a passenger in a vehicle stopped by police officers based solely on a caller's tip that a suspicious vehicle was seen driving near a specific intersection. The caller described the vehicle as a dark-green or blue Oldsmobile, but was unable to state the year or model. In addition, the caller gave no specific details upon which he based the conclusion that it was suspicious except that it had been circling the area for approximately half an hour. *Messamore*, 245 Ill. App. 3d at 630. The record showed that the caller gave his name to the dispatcher. However, that information was not given to officers responding to the call. The officers admitted they knew nothing about the caller's identity,

and, as such, they had no idea if the caller was reliable. Other evidence showed that the call may have been made by a citizen of a residential watch area. However, the officers also had no knowledge of that information. One of the officers testified that after receiving the call he saw a dark-green Oldsmobile at an intersection approximately two blocks from the intersection reported by the caller. He followed the vehicle for approximately four to six blocks. During that time the driver of the vehicle did not commit any traffic violations. The owner of the vehicle did not have a suspended or a revoked license and the vehicle's license plate and sticker were proper. The officer then activated the lights on his squad car and pulled the vehicle over in a parking lot. The officer admitted that he stopped the Oldsmobile based solely on the fact that a citizen had reported that the vehicle was suspicious. Following a hearing, the trial court granted the defendant's motion to suppress, finding the stop unlawful. The appellate court affirmed, holding that the anonymous informant's tip was brief and vague, and that the officers did not independently corroborate the tip before making the stop. The court noted "that the caller did not describe any activity from which the officers could form a reasonable suspicion justifying a stop." *Messamore*, 245 Ill. App. 3d at 630.

In *People v. Moraca*, 124 Ill. App. 3d 561 (1984), the appellate court evaluated a traffic stop based on a call to an organization that passed information on to police and sometimes offered rewards for information leading to arrests. Under a program known as Catch A Thief With Citizen's Help (CATCH), operators would take calls regarding criminal activity from anonymous sources and then relay the information to police. A detective in the Elgin police department received a phone call from an operator at CATCH informing him that an individual by the name of Moraca possessed a machine gun, which he

carried in a black pouch, and was also allegedly in possession of cannabis, which he kept in a green bag. The operator also said that Moraca drove a blue van, provided a license plate number for the van, informed police that Moraca frequented the area of Hickory Street in Elgin, and stated that Moraca may have had his driver's license suspended or revoked. *Moraca*, 124 Ill. App. 3d at 562. The detective and his partner cruised the area of Hickory Street and observed a blue van bearing the license plate number provided by the CATCH tipster parked and unoccupied in a driveway. A license plate check indicated the van was registered to a lawn care business. After returning to the police station for approximately 20 minutes, the detectives came back to Hickory Street accompanied by a uniformed officer and observed the van being driven away by a white male, whom the detectives did not recognize. The driver stopped once to drop off a passenger before being pulled over by the uniformed officer in his marked squad car. *Moraca*, 124 Ill. App. 3d at 562-63. The sole basis for effecting the stop was the information supplied by CATCH. The driver of the van exited the vehicle from the driver's side, left the door open, and walked back toward one of the detectives who had pulled up next to the van. One of the policemen, with his revolver drawn, ordered the driver up against the van, instructing him not to move while the uniformed officer frisked him. The detectives approached the van, one from each side of the vehicle and, peering through the window, saw a beer can on the dashboard. One of the detectives opened the door, reached in and felt the can which "was cold and had some beer in it." The other detective opened a black, zippered pouch which had been partially protruding from underneath the driver's seat, and observed what appeared to be a machine pistol. Up to this point, no one had asked the driver for his name or identification and the officers did not ask nor did defendant grant his

permission to go inside the van. Detectives established that the driver was Moraca and learned that his driver's license was presently suspended. Before placing defendant under arrest, one of the officers conducted a second search of the defendant's person, whereupon a green bank bag fell from defendant's coat to the pavement. One of the detectives opened the bag and observed a quantity of what he suspected was cannabis. *Moraca*, 124 Ill. App. 3d at 563. The trial court suppressed the evidence because the stop violated defendant's fourth amendment rights and the appellate court affirmed. *Moraca*, 124 Ill. App. 3d at 567.

Defendants correctly assert that *Messamore* and *Moraca* are similar to this case. However, both are distinguishable. In *Messamore*, the officers did not observe the defendant engaging in any suspicious activity before stopping him. The vehicle's identification was proper and no traffic violations were committed. As opposed to the case at bar, where a specific illegal activity was described by the caller, the caller in *Messamore* simply stated that a suspicious dark-green or blue Oldsmobile was in the area. The vague and general information provided by the caller did not establish that the tip was sufficiently reliable. Similarly, in *Moraca*, no activity took place that would provide any indicia of reliability for the tip. As the *Moraca* court stated, the tip relayed by CATCH "only informed police that defendant was 'in possession' of cannabis and a machine gun, but did not specify whether these items were even on his person or in the van." *Moraca*, 124 Ill. App. 3d at 565. The only corroborating events in *Moraca* that occurred prior to the stop were that the police located a blue van parked in the vicinity of Hickory Street. Probable cause cannot be based solely on an anonymous tip that merely provides the static details of a suspect's life along with an allegation of criminal conduct. *People v. Brannon*, 308 Ill. App. 3d 501,

505 (1999); *People v. Yarber*, 279 Ill. App. 3d 519, 529 (1996).

The United States Supreme Court has addressed the propriety of an anonymous tip as the basis for a stop. In *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), police received a telephone call from an anonymous person, stating that White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken. The informant stated that White would be going to Dobey's Motel and would be in possession of about an ounce of cocaine inside a brown attaché case. *White*, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414. Police proceeded to the apartment complex and observed a vehicle matching the description given by the caller parked in front of building 235. Police observed White leave the building empty-handed and enter the station wagon. Police followed the vehicle as it traveled the most direct route to Dobey's Motel. The vehicle was stopped just short of the motel. One of the officers asked White to step to the rear of the car, where he informed her that she had been stopped because she was suspected of carrying cocaine in the vehicle. The officer asked for and received permission to look for cocaine. A locked brown attaché case was found. Respondent provided the combination to the lock. The officers found marijuana in the case and placed White under arrest. During processing at the police station, police discovered three milligrams of cocaine in White's purse. *White*, 496 U.S. at 327, 110 L. Ed. 2d at 307, 110 S. Ct. at 2415. The trial court denied White's motion to suppress the evidence, but the appellate court held that the police did not have reasonable suspicion under *Terry* to justify the investigatory stop, and that the marijuana and cocaine should have been suppressed. A divided Supreme Court of Alabama denied the prosecution's writ for *certiorari*. Cit-

ing differing views in the state and federal courts over whether an anonymous tip may furnish reasonable suspicion for a stop, the United States Supreme Court granted *certiorari*. *White*, 496 U.S. at 327-28, 110 L. Ed. 2d at 307, 110 S. Ct. at 2415.

As recognized by the Supreme Court in *Gates*, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unknowable.' " *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2415, quoting *Gates*, 462 U.S. at 237, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332. However, the Court was careful to point out that this did not mean that an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* stop. "Something more" is required to provide an indicia of reliability of the tip. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2416. The Court found that the tip in White was significantly corroborated and exhibited sufficient indicia of reliability to justify the investigatory stop. The Court held, "[I]t is not unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." *White*, 496 U.S. at 331-32, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417.

Ten years later, the United States Supreme Court addressed the propriety of an investigatory stop based on an anonymous tip in *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000). In *J.L.*, an anonymous caller reported to the Miami-Dade police that a young black male standing at a particular bus stop was carrying a gun. Officers proceeded to the bus stop and observed

three black males there, one of whom, J.L., was wearing a plaid shirt. Apart from the anonymous tip, the officers had no reason to suspect any of the three of engaging in any illegal conduct. *J.L.*, 529 U.S. at 268, 146 L. Ed. 2d at 259, 120 S. Ct. at 1377. One of the officers approached J.L. and told him to put up his hands. The officer frisked him and seized a gun from J.L.'s pocket. After being charged under state law with two criminal offenses related to possession of the gun, the trial court granted J.L.'s motion to suppress the gun as the fruit of an unlawful search. The Florida Supreme Court held the search invalid under the fourth amendment. *J.L.*, 529 U.S. at 268-69, 146 L. Ed. 2d at 259, 120 S. Ct. at 1377-78. The officers' suspicion that J.L. had a weapon "arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller." *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378.

In affirming the Florida Supreme Court, the United States Supreme Court pointed out that " 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378, quoting *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2415. The Court recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' " *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378, quoting *White*, 496 U.S. at 327, 110 L. Ed. 2d at 306, 110 S. Ct. at 2414. The Supreme Court found that the tip in *J.L.* lacked the moderate indicia of reliability present in *White*. The anonymous call that led to J.L.'s arrest "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379. The Court further held:

"That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. ***

***

An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 271-72, 146 L. Ed. 2d at 260-61, 120 S. Ct. at 1379.

The facts of this case fall somewhere between those in *White* and those in *J.L.* In our opinion, this case is more closely related to *White*. Not only do both cases involve stops related to vehicles, but both involve specific information provided by the tipster that predicted future behavior or gave police a basis on which to corroborate information by observing the activities of the suspect or suspects. There was no such corroboration present in *J.L.* While the tip in this case, standing alone, may not have been sufficient to support an arrest or search warrant, the information provided by the caller carried sufficient indicia of reliability to justify a forcible stop. The tip was specific in its description of one of the vehicles that would be involved in the illegal activity and in its reference to the location where the transaction was to occur. Tilton police did not seek out defendants based on a vague description or innuendo. The information available to the police, coupled with the factual corroboration

of the tip's content and interpreted by commonsense considerations, would lead a reasonable and prudent person to believe that sufficient articulable suspicion had been established and that further investigation was warranted, thus justifying the stops. See *Gates*, 462 U.S. at 245, 76 L. Ed. 2d at 552-53, 103 S. Ct. at 2335-36; *Alabama*, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417; *Adams*, 131 Ill. 2d at 396-97; *Ertl*, 292 Ill. App. 3d at 869. "When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Alabama*, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417. While the officers could not observe an exchange of drugs or money from their vantage point, the officers' beliefs that the sufficient articulable suspicion to warrant the stops had been established were reasonable in this case in light of the specific content of the tip coupled with the officers' experiences and observations. Therefore, we find that defendants' constitutional rights were not violated.

### The Search

Defendants argue that, even if the tip was reliable and the stop was proper, police improperly searched Ledesma's vehicle. Defendants argue that probable cause to believe a crime has been committed is required before a search of an automobile may be conducted (*People v. Erickson*, 31 Ill. 2d 230, 233 (1964)), and that police were supplied with probable cause only after a narcotics detection dog "indicated" the presence of narcotics on Perez's pants and on the doors of Ledesma's vehicle.

It is well settled that an individual may consent to a search conducted without a warrant, thereby eliminating the need for probable cause and a search warrant. See *People v. Phillips*, 264 Ill. App. 3d 213, 217 (1994); *People v. Cardenas*, 237 Ill. App. 3d 584, 587 (1992). A consent

to search is valid under the fourth amendment if it is voluntary. *Ohio v. Robinette*, 519 U.S. 33, 40, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417, 421 (1996). Voluntariness is a question of fact to be determined from the totality of the circumstances. *Robinette*, 519 U.S. at 39, 136 L. Ed. 2d at 354, 117 S. Ct. at 421. The standard for measuring the scope of a suspect's consent is that of " 'objective' reasonableness," which requires consideration of what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302, 111 S. Ct. 1801, 1803-04 (1991).

In most instances, this determination is easily made because courts ordinarily define the scope of a search by its express object or purpose. *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804. By indicating to the suspect the intended object of the search either directly or by revealing a suspicion of specific criminal activity, a police officer not only "apprises the suspect that his constitutional rights are being impacted, but he also informs the suspect of the reasonable parameters of his inquiry." *People v. Baltazar*, 295 Ill. App. 3d 146, 150 (1998). As a result, courts have determined that an officer may search smaller containers found inside the larger area being searched if it would be objectively reasonable to find the stated object of the search in that smaller container. See *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804 (defendant's consent to search his car included search of a small paper bag found in the car because he was informed that the officer suspected that he possessed narcotics); *Phillips*, 264 Ill. App. 3d at 222 (defendant's consent to search of his motorcycle included search of a jacket located in the rear cargo area when the express object of the search was narcotics); *United States v. Lechuga*, 925 F.2d 1035, 1042 (7th Cir. 1991) (consent to search unfurnished apartment

included search of suitcase in closet because the express purpose of the search was drugs); *United States v. Rich*, 992 F.2d 502, 506-07 (5th Cir. 1993) (defendant's consent to the officer's request to look in his truck included suitcase located behind the passenger seat because the officer had just asked the defendant if he had any narcotics in the truck).

It is not necessary for police to specifically use the term "search" to constitute a valid search request under the fourth amendment. See *Baltazar*, 295 Ill. App. 3d at 150. However, the officer's words, when viewed in context, must objectively communicate to a reasonable person that the officer is seeking permission to examine the vehicle and its contents. See *Baltazar*, 295 Ill. App. 3d at 150-51. For example, in *People v. Kelk*, 231 Ill. App. 3d 797 (1992), police stopped a defendant for minor traffic violations. The officers asked the defendant if there were any drugs or weapons in the vehicle, to which defendant replied that there were not. The officers asked the defendant if he cared if they "looked in" the car. The defendant consented. The officers discovered cannabis in a duffle bag inside the vehicle. *Kelk*, 231 Ill. App. 3d at 798-99. The trial court suppressed the evidence, finding that the police had exceeded the scope of the defendant's consent to search. *Kelk*, 231 Ill. App. 3d at 798. The appellate court reversed, holding:

>"The request by a police officer to look in a suspect's car might reasonably be understood as meaning no more than just that—only to look. The person addressed by the officer might reasonably believe from that request that a police officer would seek further and additional authority from the suspect if the officer wished to search objects he found when he looked in the car. Here, the police officer asked the defendant, immediately prior to his request to 'look in the car,' if there were any drugs or weapons in the vehicle. The context of that question sufficiently informed the suspect of what the officer intended to do, and, under those circumstances, the officer could reasonably consider

the defendant's statement—that he did not care if the officer looked in his car—to be a general consent to a search of that car, including contents thereof ***." (Emphases omitted.) *Kelk*, 231 Ill. App. 3d at 800-01.

Similarly, the appellate court in this case found that Ledesma gave a valid general consent permitting police to search the vehicle and its contents. Even though Ledesma later inquired as to the purpose of the search, and according to police testimony "hem-hawed around," he never limited or withdrew his consent. We agree and hold that the trial court erred by granting defendants' motion to suppress the evidence discovered in the search of Ledesma's vehicle. Because we find that Ledesma consented to the search of his vehicle, we need not reach defendants' arguments regarding the propriety of the use of the narcotics detection canine.

## CONCLUSION

We find that the trial court erred in granting defendants' motion to suppress the evidence in this matter. We therefore affirm the appellate court's decision reversing the trial court and remanding this cause for further proceedings.

*Affirmed.*