No. 2--02--0814 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellant, )

) 

v. ) No. 01--CF--4107
            

)

BRUCE BROWN, ) Honorable

) James K. Booras,

Defendant-Appellee. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Bruce Brown, was charged with numerous offenses under the Illinois Controlled Substances Act (720 ILCS 570/101 
et seq
. (West 2000)) and the Cannabis Control Act (720 ILCS 550/1 
et seq
. (West 2000))
.  The defendant filed a motion to quash arrest and suppress evidence, which the trial court granted.  The State appeals from the May 31 and June 14, 2001, orders of the circuit court of Lake County granting the defendant's motion to quash arrest and suppress evidence and denying its motion to reconsider.  We affirm. 

On January 3, 2002, the defendant was charged by indictment with (1) unlawful possession of, with the intent to deliver, between 100 and 400 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(B) (West 2000)); (2) unlawful possession of between 100 and 400 grams of a substance containing cocaine (720 ILCS 570/402(a)(2)(B) (West 2000)); (3) unlawful possession of, with the intent to deliver, between 500 and 2,000 grams of a substance containing cannabis (720 ILCS 550/5(e) (West 2000)); (4) unlawful possession of between 500 and 2,000 grams of a substance containing cannabis (720 ILCS 550/4(e) (West 2000)); (5) unlawful possession of less than 15 grams of a substance containing heroin (720 ILCS 570/402(c) (West 2000)); and (6) three counts of unlawful possession of a weapon by a felon (720 ILCS 5/24--1.1(a) (West 2000)).  On February 13, 2002, the defendant filed a motion to quash arrest and suppress evidence.  

The trial court conducted a hearing on the defendant's motion on April 4 and 5, 2002.  Sergeant Kirk Henderson of the Zion police department testified that on December 8, 2001, he was working the 3 p.m. to 11 p.m. shift.  At about 8:30 p.m., dispatch informed him that he had a telephone call at the station from someone who wanted to give him some narcotics information.  Sergeant Henderson directed dispatch to transfer the call to his voice mail.  Sergeant Henderson retrieved the voice mail around 9 p.m.  

The caller, who wished to remain anonymous, stated that the defendant was a drug dealer in the Zion area.  The defendant was supposedly, at the time the caller was leaving the voice mail, driving home from Chicago with a kilo of marijuana.  The caller stated that the defendant lived at 3303 Colgate in Zion.  The defendant had a white van with burgundy pin-striping and a gray car.  

According to the caller, a young lady known as "P-Diddy" had assisted the defendant in selling drugs and would often drive the defendant's gray car.  The defendant also has a cousin who had assisted him.  The defendant's cousin drove a gray vehicle.  Finally, the caller stated that the defendant was a "felony" and "keeps a pistol in his house."   Sergeant Henderson did not know the person who made this anonymous tip.

Sergeant Henderson had had previous contact with the defendant.  A year prior to the defendant's arrest in this case, the defendant was the victim of an alleged robbery.  In that incident, someone  had supposedly forced his or her way into the defendant's apartment, shot either a relative or a friend of the defendant's, and then stole money or drugs from the defendant.  On another occasion, Sergeant Henderson had seen the defendant talking with one of his narcotics informants.  At that time, Sergeant Henderson ran the defendant's criminal history and learned that the defendant had convictions of  felony drug offenses.    

Based on the anonymous tip, Sergeant Henderson set up a surveillance at the defendant's residence.  A little before 11 p.m., Sergeant Henderson spotted a white Chevy conversion van with maroon pin-striping traveling east down 33rd
 Street.  A gray Honda Accord followed the van.  Both vehicles turned into the parking lot of 3303 Colgate.  Sergeant Henderson was not able to see who was driving the van or if there were any passengers in it.  He did see that a black female was driving the gray car and that there were no other occupants in the car.  At that point, Sergeant Henderson initiated a traffic stop.       

Sergeant Henderson waited for backup officers and then approached the van.  When he approached the van, Sergeant Henderson recognized the defendant.  Sergeant Henderson asked the defendant to step out of the vehicle and placed him in handcuffs.  Sergeant Henderson explained to the defendant that he was not under arrest.  Sergeant Henderson was concerned that the defendant might have a weapon.  Sergeant Henderson asked the defendant if he had anything in the van that police should know about.  The defendant replied that he had cleaning supplies in the van. 

Additionally, Sergeant Henderson asked the defendant if he knew the driver of the gray car.  The defendant identified the driver as Pam.  Sergeant Henderson approached the gray car.  The driver identified herself as Sherry Wright and did not know why the defendant would refer to her as Pam.  Sergeant Henderson then returned to his squad car, where the defendant had been taken by another officer.  

Sergeant Henderson asked the defendant who owned the vehicles.  The defendant responded that he owned both of them.  Sergeant Henderson asked the defendant for permission to search the vehicles.  The defendant did not answer.  Sergeant Henderson asked the defendant if he had any drugs in the van.  Again, the defendant did not answer.  Sergeant Henderson told the defendant that he should help himself out.  He then asked the defendant if he had anything illegal in the van.   The defendant replied that he did.  The defendant stated, "You'll find it."  When Sergeant Henderson asked the defendant to be more specific, the defendant told him to look behind the front seat.   

Sergeant Henderson searched the van.  Under the front seat,
 
he found two large zip-lock bags containing a compressed, greenish-brown leafy substance.  He suspected the substance to be cannabis.  He requested a K-9 officer.  The dog alerted on the front seat.  Sergeant Henderson subsequently had the defendant's van towed. 
    

About this time, another officer had ascertained that the driver of the gray vehicle was not Sherry Wright, but Tepaingar Wright.  Tepainger Wright's license was revoked.  Both Wright and the defendant were arrested and transported to the police station. 

Sergeant Henderson met with the defendant at the police station.  Sergeant Henderson asked the defendant for permission to search his apartment.  The defendant signed a consent form.  The defendant told Sergeant Henderson that he did not want police tearing up his apartment.  The defendant told Sergeant Henderson about several illegal items he had in the house and where police could find them.  Police searched the defendant's apartment, where they found more drugs and guns.

At 8 a.m. the next morning, Sergeant Henderson read the defendant his 
Miranda 
rights.  The defendant declined to make a voluntary statement and requested a lawyer.        

The defendant testified that on December 8, 2001, he had been at his girlfriend's house in Zion all day.  That evening he worked.  He owned a janitorial service.  He got off work shortly before 11 p.m. and then drove home.  The woman driving his gray car had been cleaning with him.  He had not been in Chicago. 

When the defendant pulled into his parking lot, a police officer turned on his mars lights and pulled in behind him.  The police officer ordered him to stay inside his vehicle.  The police officer's weapon was drawn.  When other police officers arrived, they asked him to step out of the car, frisked him, and handcuffed him.  Police told the defendant that they were searching him for safety reasons.  They did not tell him he was under arrest.  However, the defendant did not feel free to go. 

Police asked the defendant if he had anything in his van that they should know about.  He stated that he had cleaning supplies in the van.  Police told him to "help yourself out."  They asked him if he had guns or drugs.  The defendant did not respond.  Police searched his van.  Thereafter, he was transported to the police station.  He had not yet been read his 
Miranda
 rights.  

Police asked for permission to search his house.  The defendant did not voluntarily consent.  He signed the consent form because he was fearful for his safety.   When the defendant told police they needed a warrant, police stated that his "smart mouth was going to get him hurt."  The defendant asked for a lawyer and police told him that he did not need one.  

On May 31, 2001, the trial court granted the defendant's motion.  The trial court found that the initial stop of the defendant was not justified because Sergeant Henderson had acted solely on an uncorroborated, anonymous tip.  On June 14, 2002, the State filed a motion to reconsider, which on July 19, 2002, the trial court denied.  Thereafter, the State filed a certificate of impairment and timely appealed.

The State's sole contention on appeal is that the trial court erred in granting the defendant's motion to quash arrest and suppress evidence.  When reviewing a ruling on a motion to quash arrest and suppress evidence, our standard of review is usually twofold.  We accord great deference to the trial court's factual findings and reverse the findings only if they are against the manifest weight of the evidence.  
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).  We review 
de
 
novo
, however, the trial court's ultimate legal rulings on probable cause or reasonable suspicion.  
Sorenson
, 196 Ill. 2d at 431.   Because the State and the defendant agree as to the facts that are relevant to our resolution of this appeal, we confine our review here solely to the 
de
 
novo
 standard. 

The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  The Illinois Constitution provides essentially the same protection.  Ill. Const. 1970, art. I, §6; 
People v. Anthony
, 198 Ill. 2d 194, 201 (2001).  These provisions apply to all seizures of the person, including only a brief detention short of a traditional arrest.  
People v. Thomas
, 198 Ill. 2d 103, 108 (2001).  Generally, reasonableness under the fourth amendment requires a warrant supported by probable cause.  
People v. Love
, 199 Ill. 2d 269, 275 (2002).

In 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Supreme Court recognized a limited exception to the probable cause and warrant requirement.  The 
Terry
 Court held that, under appropriate circumstances, a police officer may briefly detain a person for questioning if the officer reasonably believes that the person has committed or is about to commit a crime.  
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880-81.  The 
Terry
 standard has been codified in Illinois:

"A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions."  725 ILCS 5/107--14 (West 2000).

A 
Terry
 stop must be justified at its inception.  
Thomas
, 198 Ill. 2d at 110.  The police officer initiating the stop must be able to point to specific, articulable facts, which, when taken together with natural inferences, make the intrusion reasonable.  
People v. Welling
, 324 Ill. App. 3d 594, 600 (2001).  While the facts supporting the police officer's suspicion need not rise to the level of probable cause, the officer's actions must be based on more than a mere hunch.  
Thomas
, 198 Ill. 2d at 110. 

In addition to the 
Terry
 stop being justified at its inception, the police officer's actions thereafter must be reasonably related in scope and duration to the circumstances that warranted the stop in the first place.  
People v. Cox
, 202 Ill. 2d 462, 467 (2002).  For example, a 
Terry
 stop should last no longer than is necessary to effectuate the purpose of the stop.  
Cox
,
 202 Ill. 2d at 467.  The State bears the burden of showing that the 
Terry
 stop was limited in scope and duration.  
Cox
, 202 Ill. 2d at 467. 

A lawful 
Terry
 stop may be based on information received from an informant, but the information must bear some indicia of reliability and must be sufficient to establish the requisite quantum of suspicion.  
People v. Culbertson
, 305 Ill. App. 3d 1015, 1023 (1999); 
People v. Ertl
, 292 Ill. App. 3d 863, 869 (1997).  Anonymous tips generally lack reliability.  See 
People v. Yarber
, 279 Ill. App. 3d 519, 526 (1996).  This is because anonymous tips do not demonstrate the tipster's basis of knowledge or veracity.   
People v. Sparks
, 315 Ill. App. 3d 786, 792-93 (2000).  
Nonetheless, this does not mean that an anonymous tip may never help form the basis of a police officer's reasonable suspicion.  
Sparks
, 315 Ill. App. 3d at 793.

An anonymous tip, if coupled with a police officer's independent corroboration of the tip, may provide sufficient articulable suspicion to warrant a 
Terry
 stop.  
Sparks
, 315 Ill. App. 3d 786, 793 (2000).  However, where the reliability of the information obtained from an anonymous source cannot be easily corroborated and no other suspicious circumstances are known to the police, a stop may be found unwarranted.  
Ertl
, 292 Ill. App. 3d at 869.  An anonymous tip standing alone, without corroboration, is insufficient to justify a 
Terry
 stop.  
Sparks
, 315 Ill. App. 3d at 792; 
Yarber
, 279 Ill. App. 3d at 526. 

We turn for guidance to two cases in which the United States Supreme Court has considered the propriety of an anonymous tip as the basis for a 
Terry
 stop.  In the first of those cases, 
Alabama v. White
, 496 U.S. 325, 327, 110 L. Ed. 2d 301, 306-307, 110 S. Ct. 2412, 2414 (1990), police received a telephone call from an anonymous person, stating that the defendant would be leaving her apartment at a particular time in a brown Plymouth station wagon with the right taillight lens broken. The informant stated that the defendant would be going to Dobey's Motel and would be in possession of about an ounce of cocaine inside a brown attache case.  
White
, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414.  

Based on the tip, police proceeded to the defendant's apartment complex and observed a vehicle matching the description given by the caller, parked in the apartment complex parking lot.  Police observed the defendant leave the building empty-handed and enter the station wagon.  Police followed the vehicle as it traveled the most direct route to Dobey's Motel. 
 Police stopped the defendant's vehicle just short of the motel and then asked for and received permission to search the defendant's vehicle. 
 Police found a locked brown attache case in the car, for which the defendant provided the combination.  Police discovered marijuana in the case. 
 Police subsequently discovered three milligrams of cocaine in the defendant's purse.  
White
, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S.Ct. at 2414-15.  The defendant filed a motion to suppress the evidence, which the trial court denied.  
White
, 496 U.S. at 328, 110 L. Ed. 2d at 307, 110 S. Ct. at 2415. 

On appeal, the Supreme Court upheld the decision of the trial court, finding that the stop of the defendant fell within the strictures of 
Terry
.  
White
, 496 U.S. at 330-31, 110 L. Ed. 2d at 308-09, 110 S. Ct. at 2416.  The Court explained that the anonymous tip contained a range of details, relating not just to easily obtained facts and conditions existing at the time of the tip but also to future actions of third parties ordinarily not easily predicted. 
 The Court noted that the informant was able to describe in detail not only existing facts, such as the defendant's car and apartment, but more importantly that the informant was able to predict the defendant's future behavior, indicating a special familiarity with the defendant's affairs. 
 The Court reasoned that because significant aspects of the caller's predictions were verified and corroborated, police had reason to believe that the caller was honest and well informed. 
 The Court noted, however, that this was a close case.  
White
, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417.

In the second case, 
Florida v. J.L.
, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), the Court came to the opposite conclusion.  In that case, an anonymous caller reported to the Miami-Dade police that a young black male, wearing a plaid shirt and standing at a particular bus stop, was carrying a gun. 
 Police proceeded to the bus stop and observed three black males there, one of whom, the defendant, was wearing a plaid shirt. 
 Police did not see a firearm and the defendant made no threatening or unusual movements.
  One of the officers approached the defendant and told him to put up his hands. 
 The officer frisked him and seized a gun from the defendant's pocket.  
J.L.
, 529 U.S. at 268, 146 L. Ed. 2d at 259, 120 S. Ct. at 1377.  The defendant thereafter filed a motion to suppress the gun as the fruit of an unlawful search. 
 The trial court granted the defendant's motion.  
J.L.
, 529 U.S. at 269, 146 L. Ed. 2d at 259, 120 S. Ct. at 1377.

On appeal, the Supreme Court affirmed, holding that the anonymous tip, without more, was not sufficient to justify the police officer's stop and frisk of the defendant.  
J.L.
, 529 U.S. at 274, 146 L. Ed. 2d at 262, 120 S. Ct. at 1380.  The Court reasoned that the tip came from  "an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]."  
J.L.
, 529 U.S. at 271, 146 L. Ed. 2d at 260-61, 120 S. Ct. at 1379.  The Court explained that the tip completely lacked any prediction of future behavior and that, aside from the tip, police had no independent reason to suspect the defendant of any wrongdoing, as he was just standing at the bus stop doing nothing in particular to indicate criminal activity.  
J.L.
, 529 U.S. at 270-71, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378-79.  Finally, it stressed its finding in 
White
, that "[o]nly after police observation showed that the informant had accurately predicted the woman's movements *** did it become reasonable to think the tipster had inside knowledge about the suspect."  
J.L.
, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378. 

A recent Illinois Supreme Court case, 
People v. Ledesma
, 206 Ill. 2d 571 (2003), also addresses tips by anonymous informants as the bases for 
Terry
 stops.
  In that case
, an anonymous 911 caller reported that a drug deal was about to take place in the parking lot of an Aldi grocery store on Georgetown Road in Tilton.  
The caller stated that one of the vehicles involved in the transaction would be teal colored.  The caller stated that he learned about the transaction when his scanner intercepted a cellular telephone conversation.  
The call came in at approximately midnight and the Aldi was closed.  
Ledesma
, 206 Ill. 2d at 573-74.

In response to the call, police positioned themselves in a parking lot across the street from the Aldi store.  Soon after, police observed a teal-colored vehicle drive into the empty Aldi parking lot.  
The teal vehicle then drove out of the Aldi parking lot and stopped in the Speedway parking lot adjacent to the Aldi lot.  
Next, a maroon-colored vehicle drove into the Aldi lot, exited the Aldi lot, and then drove up alongside the teal vehicle in the Speedway lot.  The two vehicles remained parked next to each other briefly with the headlights off.  The vehicles subsequently left the Speedway lot and simultaneously traveled north on Route 1.  
Ledesma
, 206 Ill. 2d at 574. 

Police effectuated a traffic stop on the vehicles.  
The defendant was the driver of the teal vehicle.  
The defendant gave police permission to search the vehicle.  
Police thereafter found cannabis in a bag on the front floorboard of the vehicle.  
Police found $5,000 in plain view in the maroon vehicle.  
The defendant filed a motion to suppress, which the trial court granted.  
Ledesma
, 206 Ill. 2d at 574-75.

On appeal, the 
Ledesma
 court reversed the trial court, finding the stop to be justified.  In so ruling, the 
Ledesma 
court considered both 
White
 and 
J.L.
  
Ledesma
, 206 Ill. 2d at 575, 588-89.  The 
Ledesma
 court noted that " 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' "  
Ledesma
, 206 Ill. 2d at 590, quoting 
J.L.
, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378.  However, the 
Ledesma
 court also noted that " 'there were situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." ' "  
Ledesma
, 206 Ill. 2d at 590, quoting 
J.L.
, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378, quoting 
White
, 496 U.S. at 332, 110 L.  Ed. 2d at 306, 110 S. Ct. at 2414.  The 
Ledesma
 court found that although the facts of the case fell somewhere in between those of 
White
 and 
J.L.
, they more closely resembled 
White
.  
Ledesma
, 206 Ill. 2d at 591.  The 
Ledesma
 court reasoned that, like in 
White
, the tip at issue contained detailed information that predicted future behavior.  The 
Ledesma
 court also reasoned  that, similar to 
White
, significant aspects of the caller's prediction were verified by police before they effectuated the stop.  
The detailed tip, coupled with the corroboration of the tip's content, warranted the stop.  
Ledesma
, 206 Ill. 2d at 591.    

Like 
Ledesma
, the facts of the present case lie somewhere between the facts of 
White 
and 
J.L
.  
 However, unlike 
Ledesma
, we do not believe that the stop here was permissible.  The tip in this case may, at first glance, seem detailed.  But, unlike 
White 
and 
Ledesma
, the majority of the details were not of a predictive nature.  For instance, the tipster here stated where the defendant lived, what types of cars he owned, and that he often associated with a lady friend and a cousin.  Such tips did not predict the future actions of the defendant nor did they show that the tipster had knowledge of concealed criminal activity.   Rather, they merely established that the tipster knew the defendant.   Reliability as to identification must not be confused with reliability as to the likelihood of criminal activity.  "[R]easonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."  
J.L.
, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379. 

The caller in this case did state that the defendant was on his way from Chicago with a kilo of marijuana.  This portion of the tip was somewhat predictive.  However, the caller was not specific as to the time or even exact place that this criminal activity would be taking place.  The caller merely stated that,
 at the time he or she was leaving the voice mail, which was about 8:30 p.m., the defendant was purportedly coming back from Chicago with drugs.   From the information the caller gave, one may only surmise what time the defendant left Chicago, what time he should return from Chicago, and what route he was taking.    

The tips in both 
White 
and 
Ledesma 
were much more specific.  The tipster in 
White 
informed police that the defendant would be transporting drugs from her apartment to a particular place at a particular time.  
White
, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414.  Similarly, the tipster in 
Ledesma
 informed police that a drug deal was going to happen at a particular place and at a particular time.  
Ledesma
, 206 Ill. 2d at 574.  The tipster in 
Ledesma 
even told police the basis for his knowledge, which was that he overheard the information on a scanner.  
Ledesma
, 206 Ill. 2d at 574.  We note that the Supreme Court found that 
White
 was a close case.  As the tip in this case was less detailed and predictive than the tip in 
White
 and was also less detailed and predictive than the tip in 
Ledesma
, which was an even closer case than 
White
, we believe that the tip here lacked the requisite indicia of reliability.   

Furthermore, 
the tip in the present case was not independently verified or corroborated.  Sergeant Henderson never observed any activity from the defendant that was consistent with the tip.   He merely observed the defendant returning home at 11 p.m.  There was nothing suspicious about the defendant returning to his home.  We note that the defendant was not even traveling in the direction that he most likely should have been traveling had he just arrived in Zion from Chicago.  We additionally note, as did the trial court, that had the defendant been on his way home from Chicago at 8:30 p.m., he probably would have returned home prior to 11 p.m.  

In 
White
 and 
Ledesma
, police corroborated and verified the anonymous tip before effectuating the stop.  In 
White
, police observed the defendant leave her apartment at the specified time and then travel the most direct route toward her alleged destination.  
White
, 496 U.S. at 327, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414.  In 
Ledesma
, police observed the defendant pull into the Aldi parking lot at the appropriate time. 
 They observed the defendant pull out of the Aldi lot and park in a lot next door.  
Moments later, another vehicle pulled in and out of the Aldi parking lot and then pulled into  the lot next door.  
It parked alongside the defendant in a manner that would be consistent with a drug deal.  
Ledesma
, 206 Ill. 2d at 574.     

Accordingly, as the anonymous tip in this case was uncorroborated and lacked the requisite  indicia of reliability, Sergeant Henderson lacked the requisite reasonable articulable suspicion and was not justified in his initial stop of the defendant.  As such, the trial court did not err in granting the defendant's motion to quash the arrest and suppress the evidence therefrom.      

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BYRNE and CALLUM, JJ., concur.