# Illinois Official Reports

## Appellate Court

***People v. Wise*, 2019 IL App (2d) 160611**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE WISE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0611 |
| Filed | February 27, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-CF-2634; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Darren E. Miller, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, David J. Robinson, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Jorgensen and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a jury trial, defendant, Willie Wise, was convicted of one count of armed violence (720 ILCS 5/33A-2(a) (West 2016)) and six counts of unlawful use of a weapon (UUW) by a felon (720 ILCS 5/24-1.1 (West 2016)). The police went to a building containing a tavern to execute a search warrant. They arrested defendant with a loaded semiautomatic firearm in his waistband, as drugs and several other firearms were found inside his apartment above the tavern.

¶ 2      Defendant argues that he was not proved guilty beyond a reasonable doubt of armed violence, because the State failed to prove that he was armed with a dangerous weapon in furtherance of the felony drug possession. He contends that his conviction requires a "nexus" between the firearm in his waistband and the drugs inside the apartment and that the State failed to prove that nexus.

¶ 3      Defendant also maintains that the search warrant was deficient on its face because it was based on the uncorroborated allegations of a confidential informant with no indicia of reliability and, therefore, the trial court erred in denying his motion to quash the warrant and suppress evidence. We affirm.

¶ 4      **I. BACKGROUND**

¶ 5      On October 15, 2015, Detective Eric Kaechele of the Lake County Sheriff's Office and "J. Doe," a confidential informant, appeared before a judge and obtained a warrant to search defendant and the northwest apartment above Frank's Lounge in North Chicago. The complaint gave detailed descriptions of defendant, the building, and the apartment. It proposed a search for firearms, ammunition, and proof of residency, as purported evidence of the offense of UUW by a felon.

¶ 6      Members of the Lake County Task Force executed the search warrant later that evening. They encountered defendant in Frank's Lounge, with a loaded, semiautomatic firearm in his waistband. The officers found a large rock of heroin, drug paraphernalia, small packages of a substance believed to be cocaine, and additional firearms in the apartment upstairs.

¶ 7      Defendant denied having access to the apartment. He insisted that his friend, Christopher Profit, who was found in the apartment, resided there. Defendant thus denied constructive possession of the items seized from the apartment, and he challenged the reliability of the confidential informant. He filed a *pro se* motion to quash the warrant and to suppress evidence, which was denied.

¶ 8      Defendant was tried before a jury on two counts of armed violence (counts I and II), seven counts of UUW by a felon (counts VII to XIII), and one count of possession with intent to deliver heroin, a controlled substance (count V). The jury found defendant guilty of all counts. The court merged some of the convictions and sentenced defendant to 23 years' imprisonment for one count of armed violence and to concurrent 14-year prison terms for the six counts of UUW by a felon. Following the disposition of several posttrial motions, defendant filed this timely appeal.

¶ 9                                    II. ANALYSIS
¶ 10                              A. Sufficiency of the Evidence
¶ 11       On appeal, defendant challenges the sufficiency of the evidence supporting his conviction of armed violence. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law, with certain exceptions that are not relevant here. 720 ILCS 5/33A-2(a) (West 2016). A person is considered "armed with a dangerous weapon" when he or she carries on or about his person or is otherwise armed with a Category I weapon, such as a handgun. 720 ILCS 5/33A-1(c)(1), (c)(2) (West 2016). In count I, defendant was charged with armed violence, in that, while armed with a dangerous weapon, a semiautomatic firearm, defendant committed the offense of unlawful possession of a controlled substance, heroin, a felony. See 720 ILCS 5/33A-2(a) (West 2016); 720 ILCS 570/402(c) (West 2016). A violation of section 33A-2(a) of the Criminal Code of 2012 (Criminal Code) is a Class X felony that is punishable by a minimum of 15 years' imprisonment. 720 ILCS 5/33A-3(a) (West 2016).

¶ 12       On a challenge to the evidence supporting a criminal conviction, a reviewing court does not retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "When reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.)" *People v. Bishop*, 218 Ill. 2d 232, 249 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Our duty is to carefully examine the evidence while giving due consideration to the fact that the finder of fact saw and heard the witnesses. The credibility of a witness is within the province of the trier of fact, and its finding on such matters is entitled to great weight, but the fact finder's determination is not conclusive. We will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Smith*, 185 Ill. 2d at 542. This standard of review applies regardless of whether the evidence is direct or circumstantial and regardless of whether the defendant was tried before the bench or a jury. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 13       In finding defendant guilty, the jury implicitly credited the State's witnesses and disbelieved defendant's testimony that he did not reside in the apartment or have access to the drugs. Defendant does not quarrel with the jury's credibility determination.

¶ 14       Instead, defendant argues that, "[e]ven if the State proved beyond a reasonable doubt that [he] possessed the handgun and constructively possessed the narcotics found inside an apartment where he purportedly lived, [the State] still failed to prove beyond a reasonable doubt that [he] committed the Class X offense of armed violence by concomitantly committing possession of a controlled substance 'while armed with a dangerous weapon,' as a single, continuous offense." Defendant's theory is that (1) the State was required to prove a nexus between the firearm in his waistband and the heroin in the apartment and (2) the State failed to establish that nexus. Defendant contends, in other words, that a person does not commit armed violence unless he is armed with a dangerous weapon *in furtherance of* the predicate felony.

- 3 -

¶ 15    Defendant frames the issue as one of statutory interpretation and advocates the *de novo* standard of review because "the facts are not in dispute and the defendant contends that the trial court erred in finding that he committed the offense of armed violence." *People v. Smith*, 191 Ill. 2d 408, 411 (2000) ("Because the facts are not in dispute, defendant's guilt is a question of law, which we review *de novo*."). The State agrees that *de novo* review applies to whether the armed violence statute requires a nexus between the firearm that defendant was carrying and the predicate drug possession. However, the State adds that the standard in *Jackson* and *Collins* still applies to how the jury viewed and drew inferences from the evidence. We agree with the State.

¶ 16    The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the legislature did not intend to create absurd, inconvenient, or unjust results. *People v. Perez*, 2014 IL 115927, ¶ 9; *People v. Hunter*, 2013 IL 114100, ¶ 13. If possible, the court must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *People v. McChriston*, 2014 IL 115310, ¶¶ 22-23; *People v. Ellis*, 199 Ill. 2d 28, 39 (2002).

¶ 17    A person commits armed violence if he commits a felony "while" armed with a dangerous weapon. 720 ILCS 5/33A-2(a) (West 2016). The plain and ordinary meaning of "while" confirms that the only "nexus" needed to sustain a conviction under section 33A-2(a) is temporal: the commission of the predicate felony must occur at the same time that the accused is armed with a dangerous weapon. The armed violence statute does not require, in the context of a drug transaction, that the weapon and the drugs be in the same place at the same time. *People v. Thomas*, 242 Ill. App. 3d 266, 276 (1993). Although the drugs were in a different part of the building than defendant and the weapon, defendant concedes on appeal that he was in constructive possession of the drugs at the same time that he carried the firearm in his waistband.

¶ 18    Defendant contends that the statute contemplates "some degree of continuance" between being armed and the predicate felony and therefore requires proof that the accused was armed *in furtherance of* the predicate felony. He relies upon section 33A-1(a), which sets forth the legislative findings as follows:

"(1) The use of a dangerous weapon in the commission of a felony offense poses a much greater threat to the public health, safety, and general welfare, than when a weapon is not used in the commission of the offense.

(2) Further, the use of a firearm greatly facilitates the commission of a criminal offense because of the more lethal nature of a firearm and the greater perceived threat produced in those confronted by a person wielding a firearm. Unlike other dangerous weapons such as knives and clubs, the use of a firearm in the commission of a criminal felony offense significantly escalates the threat and the potential for bodily harm, and the greater range of the firearm increases the potential for harm to more

- 4 -

persons. Not only are the victims and bystanders at greater risk when a firearm is used, but also the law enforcement officers whose duty is to confront and apprehend the armed suspect.

(3) Current law does contain offenses involving the use or discharge of a gun toward or against a person, such as aggravated battery with a firearm, aggravated discharge of a firearm, and reckless discharge of a firearm; however, the General Assembly has legislated greater penalties for the commission of a felony while in possession of a firearm because it deems such acts as more serious." 720 ILCS 5/33A-1(a) (West 2016).

¶ 19 Defendant argues that section 33A-1(a) manifests the legislature's intent to "punish more severely those felonies in which a defendant concomitantly uses or possesses a deadly weapon proximate to an underlying felony's commission." We disagree. The legislative findings in section 33A-1(a) set forth the goals and general reasons for the enactment of the armed violence statute but do not constitute elements of the offense. " 'Prefatory language *** generally is not regarded as being an operative part of statutory enactments.' " *100 Lake, LLC v. Novak*, 2012 IL App (2d) 110708, ¶ 25 (quoting *Governor's Office of Consumer Services v. Illinois Commerce Comm'n*, 220 Ill. App. 3d 68, 74 (1991)).

¶ 20 The legislature expressed in section 33A-1(a) its concern that a firearm, by its lethality and long range, facilitates the commission of the predicate felony and poses a much greater threat to victims, bystanders, and law enforcement than when a dangerous weapon is not used in the commission of the predicate felony. But the legislature did not articulate that concern as elements of armed violence as set forth in section 33A-2(a). The plain and ordinary meaning of the statutory language does not require the State to prove beyond a reasonable doubt that the dangerous weapon facilitated or was used or possessed "in furtherance of" the predicate felony.

¶ 21 Where the armed violence statute has been applied to various fact patterns, courts have concluded that a person is guilty of the offense when his immediate access to a firearm increases the threat of violence related to the predicate felony. See, *e.g.*, *People v. Anderson*, 364 Ill. App. 3d 528, 542 (2006) ("a defendant is not guilty of armed violence unless he possesses a weapon at a time when there is the immediate potential for violence, such as during a drug transaction or an escalating encounter with the police"); see also *People v. Brown*, 277 Ill. App. 3d 989, 992 (1996) (defendant hiding in crawl space where drugs and weapon were found); *People v. Hernandez*, 229 Ill. App. 3d 546, 551-52 (1992) (firearm and drugs found under and near mattress where defendant was sleeping); *People v. King*, 155 Ill. App. 3d 363, 365 (1987) (firearm, drugs, and defendant found inside her home); *People v. Lenoir*, 125 Ill. App. 3d 260, 261 (1984) (defendant alone in a bedroom lying on a bed next to controlled substances and a revolver). But none of those cases stand for the proposition that the State must prove beyond a reasonable doubt that the firearm facilitated the predicate felony.

¶ 22 To the extent that the State must show the potential for immediate violence to victims, bystanders, or law enforcement, the threat is proved simply by the defendant's "immediate access" to the dangerous weapon, not by the dangerous weapon facilitating the predicate felony. Even where the predicate felony is not the reason for being armed, the temporal link expressed in the armed violence statute serves the legislative purpose: "to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the

felony victim resists." *People v. Condon*, 148 Ill. 2d 96, 109 (1992). A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. Without a weapon at hand, the felon is not faced with such a deadly decision. To serve this deterrent purpose of the armed violence statute, the State must prove that the accused had some type of immediate access to or timely control over the weapon. *Condon*, 148 Ill. 2d at 109-10.

¶ 23    In *Condon*, the police executed a search warrant at Condon's home. Condon was in the kitchen. Firearms were found in the house, but none were in the kitchen or on his person. *Condon*, 148 Ill. 2d at 110. According to the supreme court, the deterrent purpose of the armed violence statute was not served, because the guns were too far removed from the kitchen for Condon to use them. *Condon*, 148 Ill. 2d at 110. The court observed that Condon "would have had to carry a weapon on his person or alternatively to have had 'immediate access to' or 'timely control over' a weapon when the police entered to have been 'otherwise armed' for purposes of the statute." *Condon*, 148 Ill. 2d at 110.

¶ 24    Defendant's immediate access to the firearm in his waistband distinguishes this case from *Condon*. The police were executing a search warrant at defendant's residence when they encountered him in the same building. While armed with the firearm, defendant could have resorted to gun violence to thwart the discovery of the firearms and the drugs upstairs in his apartment. From this evidence, the jury could reasonably infer that defendant posed a greater threat to the public and law enforcement than if he had not possessed the weapon at the time of his arrest.

¶ 25    We hold that the "while armed" element is satisfied when the accused is "armed with a dangerous weapon" in that he or she carries on or about his or her person or is otherwise armed with, *i.e.* has "immediate access to" or "timely control over," a Category I weapon, such as a handgun. 720 ILCS 5/33A-1(c)(1), (c)(2) (West 2016); *Condon*, 148 Ill. 2d at 110. The legislature could have articulated a closer connection between being armed and the predicate felony but did not. We decline to read into the statute conditions that the legislature did not express.

¶ 26    Defendant argues that we must depart from the plain and ordinary meaning of the armed violence statute based on the presumption that the legislature did not intend absurd, inconvenient, or unjust results. See *People v. Johnson*, 2017 IL 120310, ¶ 15 (where a plain or literal reading of a statute renders such results, the literal reading should yield). He offers a hypothetical fact pattern to illustrate why being armed with a dangerous weapon must be in furtherance of the predicate felony:

> "Taken to its logical conclusion, imposing criminal liability for armed violence under the circumstances present here would invite results never intended by the legislature. For instance, if no nexus or proximity need be shown between a defendant's possession of a firearm and the predicate felony of constructive possession of narcotics, this would mean that a person who possessed cocaine in his home in Elgin effectively could be found guilty of armed violence if he lawfully used a firearm on a weekend hunting trip in downstate Illinois."

¶ 27    The point of defendant's hypothetical fact pattern is the implication that a long distance between the drugs and the defendant and his weapon diminishes the threat of immediate violence. Defendant invites us to carve an exception to section 33A-2(a) where being armed and the predicate felony are so-called "separate events." We need not answer defendant's

hypothetical fact pattern to decide this appeal. We offer no opinion about whether defendant's hypothetical offender could be found guilty of armed violence.

¶ 28    We note, however, that if the legislature had intended to treat constructive-possession felonies differently from offenses that are routinely facilitated by being armed, it could have done so. Of course, the legislature may amend the statute if it wishes to more narrowly define the offense of armed violence as currently set forth in section 33A-2(a).

¶ 29    Besides the concurrent timing and "immediate access to" or "timely control over" the dangerous weapon, the plain and ordinary meaning of the statutory language does not require a further nexus between being armed with a dangerous weapon and the predicate felony. But even if, as defendant claims, the State were required to prove that he was armed with a dangerous weapon *in furtherance* of the predicate drug possession, the jury could have reasonably inferred from the evidence that defendant was armed to protect his contraband, which was located in the same building. Thus, there was evidence upon which a rational jury could find a nexus. When considering all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of armed violence beyond a reasonable doubt. See *Cunningham*, 212 Ill. 2d at 278.

¶ 30    B. *Pro Se* Motion to Suppress

¶ 31    The complaint for the warrant asserted that Detective Kaechele and "J. Doe" appeared before the issuing judge and requested a search warrant. The complaint described defendant and the apartment to be searched. The complaint proposed a search for firearms, ammunition, and proof of residency, as purported evidence of UUW by a felon.

¶ 32    Doe asserted in the complaint that he had been inside the apartment within the past 72 hours. Inside the apartment, he observed defendant with several specific firearms. Detective Kaechele stated that he learned of these facts from a conversation with Doe and that he confirmed through the Lake County circuit clerk's office that defendant was a convicted felon who could not legally possess firearms. The complaint was silent as to whether defendant resided at the apartment, how Doe knew defendant, or whether Detective Kaechele had worked with Doe before.

¶ 33    The judge issued the search warrant, stating that the "Complainants Doe and Kaechele appeared in person" and "made a complaint in writing on oath." The judge found probable cause to justify issuance of the warrant "upon examination of the Complainant." The warrant did not specify which complainant was examined. The warrant granted authority to search defendant and the northwest second-floor apartment at 2234 Green Bay Road, North Chicago, for firearms, ammunition, and proof of residency.

¶ 34    Defendant chose to represent himself for a period before trial. He moved to quash the search warrant and to suppress the drugs and the firearms seized in the apartment. Defendant's motion alleged that the police "acted with a [*sic*] insufficient search warrant" and that the "search warrant was not based on probable cause." The motion also alleged that Doe gave an "uncorroborated statement" and that the search warrant "was based on uncorroborated hearsay." The court clarified before the hearing on the motion that defendant was also alleging that the warrant was issued without information concerning Doe or corroboration of Doe's assertions.

¶ 35    At the hearing on his *pro se* motion, defendant testified that the apartment was not his and that Doe had not alleged in the complaint that defendant lived there. The apartment was Profit's. Defendant admitted to occasionally visiting the apartment, but he denied leaving personal property there or having keys to it.

¶ 36    Detective Kaechele testified that, on October 15, 2015, he and Doe met with the issuing judge and obtained the search warrant. During the detective's testimony, the State objected to several questions posed by defendant: whether Detective Kaechele had worked with Doe before, whether Doe had a reason to lie, how he knew Doe, how Doe "came about this information," whether Doe had previously provided information, and whether Detective Kaechele had firsthand knowledge of probable cause to support the search warrant. The trial court sustained the State's objections to these questions.

¶ 37    The trial court acknowledged a lack of corroboration of Doe's statement, but the court denied the motion to suppress. The court found that the search warrant was supported by probable cause, including the issuing judge's examination of Detective Kaechele and Doe.

¶ 38    Defendant moved to reopen the motion to suppress, alleging that there was no basis to credit the hearsay supporting the warrant and that the warrant was insufficient on its face. Defendant argued that Doe's reliability had not been established. The court held that, when an affiant appears before the issuing judge and the judge is "able to take testimony directly from that individual," the law does not require corroboration. The court noted that the issuing judge "took testimony from Detective Kaechele as well as from the individual identified as J. Doe." After the *pro se* motions were resolved against defendant, he chose to be represented by appointed counsel.

¶ 39    Following the guilty verdict, defense counsel filed a motion for a new trial and an amended motion. Counsel's motion did not argue that the motion to suppress was improperly denied. Defendant filed a *pro se* motion for a new trial, and the court granted defendant leave to file a *pro se* amended motion. The *pro se* motion and amended motion alleged that the court improperly denied the motion to suppress.

¶ 40    Defendant appeared in court and indicated that he wanted to dismiss defense counsel. The court inquired into defendant's claims but denied his request. The court also denied counsel's amended motion for a new trial. It appears that the court did not rule upon defendant's two *pro se* posttrial motions.

¶ 41    Defendant argues that the search warrant was deficient on its face because Doe was not reliable. Specifically, defendant argues that Doe's statement in the complaint was uncorroborated and that Detective Kaechele failed to provide indicia of reliability.

¶ 42    The State responds that (1) defendant has forfeited the issue, (2) there was probable cause to support the warrant simply because Doe appeared before the issuing judge, (3) even if Doe's appearance is not dispositive of reliability, the totality of the circumstances supports the probable cause determination, and (4) even if probable cause was lacking, the evidence seized pursuant to the warrant was admissible under the good-faith exception to the exclusionary rule.

¶ 43                                    1. Forfeiture

¶ 44    In a criminal case, the defendant preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection and (2) including it in a posttrial

motion. *People v. Denson*, 2014 IL 116231, ¶ 18. The omission of either step results in forfeiture of the issue. *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

¶ 45    Defendant's *pro se* motion to quash the warrant and suppress evidence challenged Doe's reliability. After his conviction and while he was represented by counsel, defendant filed a *pro se* posttrial motion and amended motion raising the issue. Defense counsel filed a posttrial motion that did not raise the issue. The State contends that, in light of this procedural history, defendant has forfeited the issue, on four bases.

¶ 46    First, the State argues that defendant's *pro se* motion to suppress lacked specificity. The State points out that the motion merely challenged Doe's reliability generally and emphasized a lack of corroboration for his statement. The State argues that defendant cannot now present the related argument that Doe was unreliable because he failed to testify before the issuing judge. We disagree. During his *pro se* representation, defendant challenged Doe's credibility, asserting that too little was known about Doe to issue the search warrant. Testifying before the issuing judge likely would have shed light on Doe's background and credibility. Defendant is not introducing a novel argument on appeal simply by pointing out the relevance of whether Doe testified before the issuing judge.

¶ 47    Second, the State asserts that defendant's *pro se* posttrial motion did not preserve the issue, because his counsel's posttrial motion did not raise it and defendant was not entitled to hybrid representation. See *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 30 (with the exception of posttrial motions alleging ineffective assistance of trial counsel, defendants represented by counsel have no authority to file *pro se* motions, and the court should not consider such motions).

¶ 48    Third, the State contends that defendant effectively abandoned the issue because he did not ask the trial court to consider and rule on his *pro se* posttrial motion. *People v. Willoughby*, 362 Ill. App. 3d 480, 484 (2005) (a party filing a motion abandons the motion by failing to request a hearing and obtain a ruling).

¶ 49    Fourth, the State argues that defendant's *pro se* posttrial motion raised the issue of probable cause to issue the warrant but did not specifically challenge Doe's reliability.

¶ 50    Defendant anticipated the State's forfeiture theories and argues that defense counsel was ineffective for failing to raise in his posttrial motion the issue of Doe's reliability. The United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The purpose of this guarantee is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007). The ultimate focus of the inquiry is on the fundamental fairness of the challenged proceedings. *Strickland*, 466 U.S. at 696; *Pineda*, 373 Ill. App. 3d at 117. "However, there is a strong presumption of outcome reliability, so to prevail, a defendant must show that counsel's conduct 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 686).

¶ 51    Claims of ineffective assistance of counsel are generally evaluated under the two-part test set forth in *Strickland*, 466 U.S. at 687, and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). *People v. Harris*, 225 Ill. 2d 1, 20 (2007). Under *Strickland*, defense counsel was ineffective only if (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's error prejudiced the defendant. Failure

to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 687; *Pineda*, 373 Ill. App. 3d at 117.

¶ 52 We assess counsel's performance by using an objective standard of competence under prevailing professional norms. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *Ramsey*, 239 Ill. 2d at 433. Counsel's strategic choices that are made after investigation of the law and the facts are virtually unassailable. *Ramsey*, 239 Ill. 2d at 433.

¶ 53 Whether a motion to quash a search warrant and suppress evidence should be pursued is a matter of trial tactics and has little bearing on competency of counsel. *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 20. However, if defendant's challenge to Doe's reliability is meritorious and would have compelled suppression of the evidence, both prongs of the *Strickland* standard would be met. *Kornegay*, 2014 IL App (1st) 122573, ¶ 19 (citing *People v. Henderson*, 2013 IL 114040, ¶ 12) (to establish prejudice under *Strickland*, based on counsel's failure to file a suppression motion, the defendant must demonstrate that the motion would have been meritorious and that at least a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed).

¶ 54 By claiming ineffective assistance based on defense counsel's omission, defendant avoids forfeiture that might have occurred while he was represented. See *People v. Chears*, 389 Ill. App. 3d 1016, 1027 (2009) (defendant avoids forfeiture by arguing that trial counsel was ineffective for not filing a motion to reconsider the sentence, a procedural omission that ordinarily bars a sentencing issue from being raised on appeal). The ineffectiveness claim renders moot the State's second, third, and fourth arguments of forfeiture concerning counsel's posttrial challenge to the suppression ruling, so regardless of whether defendant forfeited this claim, we must address whether defendant's *pro se* suppression motion was properly denied.

¶ 55                             2. Denial of Suppression Motion

¶ 56 Defendant argues that nothing in the complaint for the search warrant corroborated Doe's observations and that the State presented nothing to indicate his prior reliability. On a motion to suppress, the defendant bears the initial burden to prove the unlawfulness of the search and seizure. If the defendant makes a *prima facie* showing that the search and seizure were unlawful, the burden shifts to the State to produce evidence justifying the intrusion. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 41.

¶ 57 Review of a ruling on a motion to quash a search warrant and suppress evidence can present both questions of law and questions of fact. *People v. Lee*, 214 Ill. 2d 476, 483 (2005); *People v. Urbina*, 393 Ill. App. 3d 1074, 1077 (2009). On review, we must defer to the trial court's findings of fact and will not disturb them unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). In contrast, we review *de novo* the ultimate question of whether a motion to quash a search warrant and suppress evidence should have been granted on a given set of facts. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

¶ 58 The issuing magistrate's task " 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Smith*, 372 Ill. App. 3d 179, 184 (2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); see also *People v. McCarty*, 223 Ill. 2d 109, 153 (2006). Whether the necessary probable cause exists is governed not by technical legal rules, but rather by commonsense considerations that are factual and practical. *Kornegay*, 2014 IL App (1st) 122573, ¶ 21. Our task on review is simply to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39.

¶ 59   The Supreme Court has recognized that probable cause cannot be based on an uncorroborated tip from an unidentified informant. In *Florida v. J.L.*, 529 U.S. 266 (2000), an anonymous informant called the police and reported that a young black male who was standing at a specific bus stop and wearing a plaid shirt was carrying a gun. The Supreme Court held that the anonymous tip, without more, did not even amount to reasonable suspicion of wrongdoing and, thus, was not sufficient to justify the officer's stop and frisk of the defendant. *J.L.*, 529 U.S. at 274.

¶ 60   This court applied the holding of *J.L.* in *People v. Brown*, 343 Ill. App. 3d 617, 619 (2003), where an anonymous caller informed an officer that the defendant was driving to the defendant's home with a shipment of drugs and that he kept a gun in his home. The officer arrested the defendant outside his home, and a gun and narcotics were recovered from the defendant's home and car. *Brown*, 343 Ill. App. 3d at 619-20. Although the tip provided the exact identity of the defendant, we held that the police lacked reasonable suspicion to stop the defendant, because the tip lacked the requisite indicia of reliability. *Brown*, 343 Ill. App. 3d at 626-27.

¶ 61   Defendant cites *J.L.* and *Brown* for the general principles for evaluating the reliability of anonymous tipsters, who are truly unknown to law enforcement. But in this case, the information was supplied by an informant personally appearing before the issuing judge. The informant's identity was concealed for the limited purpose of obtaining the warrant, making *J.L.* and *Brown* factually distinguishable. See *Kornegay*, 2014 IL App (1st) 122573, ¶ 29 ("in *J.L.* and *Brown*, the informants did not appear before a magistrate, the informants did not describe the basis for their knowledge, and the officers did not obtain search warrants," making them different from confidential-informant cases involving warrants).

¶ 62   Defendant argues that, despite Doe's appearance before the issuing judge, no evidence was presented that Doe was actually questioned and, therefore, the information he provided was unreliable, the warrant should have been quashed, and the evidence should have been suppressed. The Seventh Circuit Court of Appeals has upheld a search warrant where the informant was available for questioning before its issuance, even though no evidence was presented that the informant was actually questioned. *United States v. Johnson*, 289 F.3d 1034, 1037 (7th Cir. 2002). The informant "took an oath and signed an affidavit mirroring the details" in the police officer's application for the warrant, but the record was "unclear" regarding whether the judge questioned the informant, whether the informant testified to the judge, or whether the judge otherwise observed the informant's demeanor. *Johnson*, 289 F.3d at 1037.

¶ 63   In *Johnson*, a police officer and a confidential informant appeared in court before the issuing judge. The informant had told the officer that he had observed the defendant manufacturing cocaine at a particular address and that the defendant told him he intended to sell the substance. *Johnson*, 289 F.3d at 1036. The officer corroborated that the defendant

was a black male born on the date specified by the informant and also confirmed that a vehicle parked at the address was registered to the defendant. *Johnson*, 289 F.3d at 1036. On appeal from the probable cause determination, the Seventh Circuit examined the totality of the circumstances as instructed by *Gates*. *Johnson*, 289 F.3d at 1038-39. The *Johnson* court observed:

> "When the credibility of a [confidential informant] is at issue, our prior cases instruct us to consider several factors, such as the informant's personal observations, the degree of detail given, independent police corroboration of the *** information, and whether the informant testified at the probable cause hearing. [Citations.] No single issue is dispositive; 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.' [Citation.] We emphasize these factors as a means of examining the [informant's] reliability and whether, based upon the facts provided by the [informant], a substantial basis existed for concluding that law enforcement officials would discover evidence of a particular crime in a particular place. [Citation.]" *Johnson*, 289 F.3d at 1038-39 (quoting *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999)).

¶ 64    The defendant in *Johnson* contended, as defendant does here, that although the informant was present in court, the record did not establish that the judge questioned the informant. *Johnson*, 289 F.3d at 1040. Noting that "an on-the-record exchange" between the judge and the informant would support a finding of reliability, the Seventh Circuit found that such evidence was not required, considering that the informant's presence and availability to be questioned were "themselves indicia of reliability because they eliminate some of the ambiguity that accompanies an unknown hearsay declarant." *Johnson*, 289 F.3d at 1040. The court added that the informant's presence "allows the issuing judge to confront the [informant] if necessary." *Johnson*, 289 F.3d at 1040.

¶ 65    The Appellate Court, First District, has followed *Johnson*, stating that when a confidential informant appears before the issuing judge, the absence of affirmative proof that he was questioned by the judge is only one factor to be considered under *Gates*. *Smith*, 372 Ill. App. 3d at 184 ("Noting the factors set out in *Johnson*, we weigh the informant's personal observations, the degree of detail offered and police corroboration of the information against the fact that the record does not establish that the informant testified in support of the warrant."); see *Johnson*, 289 F.3d at 1038-39. Defendant urges us to follow *Smith* and *Johnson*, evaluate Doe's reliability under the totality of the circumstances, and conclude that there are no indicia to overcome the lack of an on-the-record colloquy between Doe and the issuing judge.

¶ 66    In contrast, the State advocated in its brief the less-stringent approach taken in previous cases. In *People v. Moser*, 356 Ill. App. 3d 900, 909 (2005), this court held that where "the informant has appeared before the issuing judge, the informant is under oath, and the judge has had the opportunity to personally observe the demeanor of the informant and assess the informant's credibility, additional evidence relating to informant reliability is not necessary." See also *People v. Phillips*, 265 Ill. App. 3d 438, 448 (1994) (holding that corroboration of the informant's allegations was not needed where the informant appeared before judge issuing search warrant). At oral argument, however, the State withdrew its assertion that corroboration is unnecessary when the informant appears before the judge, conceding that the reliability of the informant should be evaluated under the totality of the circumstances. In any

event, we need not decide between the competing lines of cases, because even the more stringent standard set forth in *Smith* compels us to affirm the denial of suppression.

¶ 67    In this case, as in *Johnson*, Doe provided a firsthand observation of illegal activity by defendant, a felon who was not allowed to possess guns. Detective Kaechele had confirmed that defendant was a felon before seeking the warrant on the basis of defendant's possession of multiple guns. Doe averred that he was in the apartment within the 72 hours preceding the complaint for the warrant, and he offered not a general description of guns but an extremely detailed description of several firearms. Doe named defendant and told Detective Kaechele that he had seen him, a person specifically described in the complaint, in possession of four AK-47 rifles, one Tec-9 machine gun, two .40-caliber pistols, three 9-millimeter semiautomatic handguns, one revolver, and two unknown black semiautomatic handguns. Doe appeared before the issuing judge, making himself available for questioning and to address any concerns about his veracity. The issuing judge could witness Doe's demeanor, and Doe signed the affidavit. Defendant concedes that Doe exists. See *Phillips*, 265 Ill. App. 3d at 444 (informant's appearance before issuing judge eliminates doubt that there is an informant who provided the information, and his appearance allows the judge to observe his demeanor and assess his credibility). The warrant stated that the issuing judge found probable cause, not just based on the facts to which Detective Kaechele and Doe swore, but also after examining "the Complainant," which could have been Doe. See *Kornegay*, 2014 IL App (1st) 122573, ¶ 22 (although it might not be easy to determine in a particular case when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants). Doe's availability to be questioned showed some indicia of reliability. *Johnson*, 289 F.3d at 1040. Like the courts in *Johnson* and *Smith*, we determine that Doe's reliability was sufficiently established and that there was probable cause to support the warrant. See *Johnson*, 289 F.3d at 1039; *Smith*, 372 Ill. App. 3d at 184.

¶ 68    This case is analogous to *Kornegay*, where the defendant was arrested after the police executed a search warrant for the residence of the defendant and his girlfriend. The police seized evidence that resulted in charges of UUW by a felon and drug possession. *Kornegay*, 2014 IL App (1st) 122573, ¶ 3.

¶ 69    As in this case, a police officer and an informant appeared before the issuing judge and subscribed and swore to a complaint for a search warrant, seeking to search the defendant and his residence. *Kornegay*, 2014 IL App (1st) 122573, ¶ 4. In the complaint, the officer averred to his qualifications and experience and to his conversation with the informant concerning narcotics sales at the defendant's apartment. The officer stated that he had not included every fact known to him concerning the investigation but included only the facts that he believed were necessary to establish probable cause. According to the officer, the informant related that, within the last 48 hours, he went to the apartment to purchase 10 bags of cannabis from a black male whom the informant knew as "Sidney," which was the defendant's first name. In the complaint for the warrant, the officer retold the detailed story that the informant had recounted regarding his purchase of the cannabis. *Kornegay*, 2014 IL App (1st) 122573, ¶ 4. The officer swore to the assertion that he and the informant " 'appeared before the undersigned judge and [were] available for any questions and swore to the contents of this complaint. [The informant's] criminal history, including possible pending

investigations, if any, have been presented and made available to the undersigned judge.' " *Kornegay*, 2014 IL App (1st) 122573, ¶ 4.

¶ 70　　Upon the presentation of the complaint and appearance of the officer and the informant, the judge found that the complaint stated facts sufficient to show probable cause and issued a warrant to search the defendant and his apartment. *Kornegay*, 2014 IL App (1st) 122573, ¶ 5. The search warrant directed the seizure of items that had been used in the commission of, or that constituted evidence of, the offense of unlawful possession of cannabis. *Kornegay*, 2014 IL App (1st) 122573, ¶ 5.

¶ 71　　The First District emphasized that, despite the lack of proof that the informant was questioned in court, the informant appeared before the judge and, thus, was available for questioning. *Kornegay*, 2014 IL App (1st) 122573, ¶ 36. The uncertainty as to whether that questioning occurred did not undermine the judge's finding of probable cause, because the informant's very presence supported his or her reliability. *Kornegay*, 2014 IL App (1st) 122573, ¶ 36 (citing *Johnson*, 289 F.3d at 1040). The court held that the totality of the circumstances provided the judge with a substantial basis to conclude that probable cause existed to search the apartment. *Kornegay*, 2014 IL App (1st) 122573, ¶ 36.

¶ 72　　*Kornegay* supports our holding. The lack of an on-the-record colloquy between the judge and Doe does not destroy Doe's reliability. See *Kornegay*, 2014 IL App (1st) 122573, ¶ 33. The incomplete record of Doe's appearance before the judge is a factor favoring defendant in the *Gates* " 'totality of the circumstances' " analysis (*Kornegay*, 2014 IL App (1st) 122573, ¶ 33 (quoting *Johnson*, 289 F.3d at 1040 n.3)), but the remaining factors weigh against quashing the warrant and suppressing the evidence.

¶ 73　　We conclude that the trial court did not err in denying the motion to quash and suppress and that defense counsel did not render ineffective assistance for failing to challenge that ruling after trial. Therefore, we need not address defendant's argument that a remand for a new suppression hearing is necessary or the State's claim that any error should be excused because the police acted in good faith in executing the warrant.

¶ 74　　　　　　　　　　　　　III. CONCLUSION

¶ 75　　The trial court did not err in denying defendant's motion to quash the search warrant and suppress evidence, and defendant was proved guilty beyond a reasonable doubt of armed violence due to the risk of violence associated with being armed with a dangerous weapon while constructively possessing drugs. For the preceding reasons, the judgment of the circuit court of Lake County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 76　　Affirmed.