**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230404-U

Order filed August 15, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0404 Circuit No. 23-DV-9 |
| NOEMI D. GARCIA, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade and Justice Hettel concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. (2) The court did not hold the State to a diminished burden of proof. (3) Defendant was not prejudiced when she was not allowed to testify regarding the victim's postincident statement.

¶ 2     Defendant, Noemi D. Garcia, appeals her convictions for domestic battery arguing (1) she was not proven guilty beyond a reasonable doubt, (2) she was denied her constitutional right to due process where the Du Page County circuit court held the State to a diminished burden of proof,

and (3) error resulted where defendant was not allowed to testify regarding the victim's postincident statement. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4        Defendant was charged with four counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2022)) and one count of assault (*id.* § 12-1(a)) related to a January 2, 2023, incident with Carlos Peralis. Defendant raised the affirmative defense of self-defense. The matter proceeded to a bench trial.

¶ 5        Peralis testified he lived with defendant and their daughter at the time of the incident. On January 1, 2023, he and defendant had an argument. Defendant resumed the argument the next morning while Peralis was in the kitchen. Defendant blocked Paralis's exit and began pushing him in the chest. Peralis then entered the bedroom to get away from defendant and to look for his cell phone. Peralis stated that he wanted his cell phone so he could record the interaction because there was a history of violence between them. Defendant followed Peralis into the bedroom. Peralis could not find his cell phone, so he returned to the kitchen and grabbed defendant's cell phone. Peralis then returned to the bedroom and found his cell phone. Defendant continued to push Peralis. Defendant grabbed Peralis's neck and left scratch marks. The interaction caused Peralis to fall to the floor. When he stood, defendant grabbed a belt and raised it as if to hit him and threatened to kill him.

¶ 6        Peralis recorded two videos on his cell phone, which were admitted into evidence. Each video was approximately five seconds long. The first video showed Peralis, while holding his daughter, stating defendant was "hitting me again. Look. With a fucking belt," before defendant reached for the cell phone and the video ended. In the second video, Peralis, still holding their daughter, stated to the camera, "Look, hitting me," while defendant said, "leave [our daughter]

2

alone." Defendant again reached for the cell phone before the video ended. There were red scratch marks on Peralis's neck in both videos. Peralis was later able to leave the apartment and call 911. Peralis indicated he sought an order of protection (OP) against defendant on January 5, 2023. In his application for the OP, Peralis swore defendant hit him in the head with her fists. The request for the OP did not mention that defendant threatened to kill Peralis.

¶ 7        A sergeant with the Wheaton Police Department testified he was dispatched to the residence on January 2, 2023. Peralis was standing outside with a baby when the sergeant arrived. The sergeant noted Peralis had scratch marks on his neck and there was fresh blood on them. Defendant told the sergeant that she and Peralis had an argument that started in the kitchen and continued in the bedroom where it became physical. Peralis pulled defendant's hair and pushed her, causing her to fall to the floor. The sergeant testified that defendant's "story changed a bit" as to whether she fell into the dresser or the bed. Defendant claimed she scratched Peralis and grabbed the belt to get away from him. The sergeant had previously been to their residence for domestic batteries and disputes. After the sergeant's testimony, the State rested.

¶ 8        A Wheaton police officer testified for the defense that he was dispatched to the residence the morning of January 2, 2023. He spoke to Peralis and wrote an incident report. The officer did not recall whether Peralis stated defendant threatened to kill him. The officer also did not recall Peralis stating he fell to the floor.

¶ 9        Defendant testified she lived with Peralis and their daughter on the date of the incident. On the morning of January 2, 2023, defendant and Peralis were in the kitchen with their daughter when they began arguing. During the argument, Peralis walked away, and defendant followed him into the bedroom. Defendant testified that Peralis pulled her hair and pushed down on her neck to force her to the floor. Defendant grabbed Peralis's neck to prevent herself from falling. Peralis forced

3

defendant to the floor near the dresser and the bed. Defendant denied telling the police she fell into either the dresser or bed. Peralis threatened to "fuck [her] up." Defendant grabbed a belt to defend herself. Peralis entered the kitchen and returned holding their daughter.

¶ 10 Defendant testified that Peralis saw the scratch marks on his neck and stated, "now I'm going to do what you've done to me and now you can lose your precious job." The State objected to the statement as hearsay. The court sustained the objection but asked defense counsel whether any hearsay exceptions applied. Counsel replied, "[c]ourse of conduct as to what happened next." The court asked, "[h]ow does that have an affect on what [defendant] did next?" Counsel withdrew the question.

¶ 11 Defendant also testified regarding two prior incidents of abuse from Peralis. On May 14, 2021, while intoxicated, Peralis insulted her, threw a cell phone at her head, and pushed her against the wall and bed. Peralis then hit her with a tequila bottle as she tried to leave. Photographs showing bruising to defendant's body as a result of this incident were admitted into evidence.

¶ 12 Next, defendant testified that on May 28, 2022, Peralis arrived home intoxicated and began insulting her. Peralis grabbed a mirror and began listing everything wrong with defendant. Defendant attempted to walk away but Peralis followed, pushed her, and attempted to prevent her from leaving. Defendant was able to get away from Peralis and called the police. The police convinced Peralis to spend the night in his car. The next day, Peralis hit and spit on defendant. Defendant called the police again, and they arrested Peralis. Photographs of the injuries defendant sustained in that incident were admitted into evidence, which showed bruising on her body.

¶ 13 During closing arguments, defense counsel pointed out the discrepancies in Peralis's testimony and his request for an OP, including Peralis's failure to inform the responding officer that he fell to the floor or that defendant threatened to kill him. Counsel argued Peralis had "a clear

4

motive to lie" because he was not a United States citizen, and a domestic battery conviction could result in his deportation.

¶ 14    The court believed that both Peralis and defendant had credibility issues and "embellished" their testimony. The court noted the contradictions between Peralis's testimony and the information in the request for an OP and did not believe Peralis's testimony that he was not able to find his cell phone in the bedroom. The court continued:

"that doesn't mean that I throw the whole case out. So I take a look at what objectively can I find. Well, clearly, he did have marks on his neck. *** [Defendant] put them there. *** [W]hat is clear from both sides is that [Peralis] then left. He's the one walking away from the situation. This woman who is fearful of him because he has battered her several times over goes after him to continue arguing. For what purpose? In what world does continuing to follow someone into the bedroom to continue the arguing actually solves something. It doesn't. All that happens is that it escalates things ***. *** So she followed him, and it escalated. And more likely than not, she's the person who was the aggressor if he's just walking away."

The court concluded:

"I don't believe that when she follows him into the bedroom to continue to argue and that a physical incidence occurs in which she sustains no injury whatsoever *** and [Peralis] is the only one with injury[,] that her scratching him and drawing blood on the neck was necessary and reasonable, and a reasonable amount of force necessary to free her from *** [Peralis's] violent act."

When discussing the disposition of the charges, the court explained:

5

"I do find the defendant not guilty of count two for grabbing the body. Not guilty of count one for grabbing the body. Not guilty of count five for the assault. I believe that I am not convinced beyond a reasonable doubt that when she grabbed the belt, she didn't think that perhaps she was defending herself from aggression by [Peralis]. I do find, however, that she is guilty of count three and count four which is grabbing the neck and causing injury to the neck."

Thus, defendant was found guilty of two counts of domestic battery. The counts merged, and defendant was sentenced to six months' conditional discharge. Defendant's motion to reconsider was denied.

¶ 15                                        II. ANALYSIS

¶ 16        On appeal, defendant argues (1) she was not proven guilty beyond a reasonable doubt of domestic battery where the State did not disprove her claim of self-defense, (2) she was denied her constitutional right to due process where the court held the State to a diminished burden of proof, and (3) error resulted where defendant was not allowed to testify regarding the victim's postincident statement. We will consider each issue in turn.

¶ 17                                A. Sufficiency of the Evidence

¶ 18        Defendant was convicted of two counts of domestic battery, which required the State to prove defendant, without legal justification, caused bodily harm and made physical contact of an insulting or provoking nature to a family or household member. See 720 ILCS 5/12-3.2(a)(1), (2) (West 2022). As defendant raised the claim of self-defense, the State bore the burden of establishing beyond a reasonable doubt defendant did not act in self-defense. *People v. Lee*, 213 Ill. 2d 218, 224 (2004).

6

"The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *Id.* at 225

Defendant's claim of self-defense fails where the State negates any element. *Id.*

¶ 19 The fact finder must assess the credibility of the witnesses and the weight to be given to their testimony, resolve conflicts or inconsistencies in the evidence, and determine which inferences to draw from the evidence. *Id.* The standard of review is whether any rational trier of fact would have found beyond a reasonable doubt that defendant did not act in self-defense after considering the evidence in the light most favorable to the State. *Id.*

¶ 20 Here, the court was tasked with resolving the discrepancies between the testimonies and determining which inferences to draw from the evidence. See *People v. Evans*, 209 Ill. 2d 194, 211 (2004). The court properly did so, questioning the credibility of both defendant and the victim. The court relied in part on both defendant and Peralis's testimony. In so doing, it determined defendant and Peralis had an argument in the kitchen. Peralis left the kitchen, and defendant followed him into the bedroom. Once in the bedroom, the argument escalated. Defendant scratched Peralis's neck causing a pronounced cut and bleeding. Defendant suffered no noticeable injury during the altercation. The video recordings also showed defendant, after the admitted battery, attempting to stop Peralis from recording videos by physically grabbing the cell phone out of Peralis's hand while he was holding their child. Based on these facts, the court concluded that defendant was the initial aggressor and the force used was not necessary; therefore, defendant's

7

claim of self-defense was negated beyond a reasonable doubt. The court did not need to find Peralis wholly credible to arrive at this conclusion. See *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979) ("the trier of fact is free to believe part of one's testimony without believing all of it"). Reviewing the evidence in the light most favorable to the State, a reasonable trier of fact could have arrived at the same conclusion. Thus, we find no error in the court's findings of guilt.

¶ 21                               B. Diminished Standard of Proof

¶ 22        Defendant next argues the court applied a lowered standard of proof by only requiring the State to show defendant was "more likely than not" the initial aggressor. However, considering the record as a whole, we find the court applied the correct standard. When discussing the ultimate findings of guilt, the court determined defendant was not guilty on the count of assault because it was "not convinced beyond a reasonable doubt that when [defendant] grabbed the belt, she didn't think that perhaps she was defending herself from aggression by [Peralis]." Additionally, while the court may have used the language "more likely than not" when finding that defendant was the initial aggressor, it also found that defendant's battery was not "necessary and reasonable" and that it was not "a reasonable amount of force necessary to free" defendant from Peralis. As has already been established, the State need only negate one of the elements of self-defense to defeat defendant's self-defense claim. *Lee*, 213 Ill. 2d at 225. The court's finding that defendant's use of force was not necessary defeats that claim.

¶ 23        The court clearly understood the elements of self-defense and what needed to be proven or negated beyond a reasonable doubt and applied the correct standard here. To the extent there is any ambiguity in the court's ruling, the court is "presumed to know the law and to follow it." *People v. Thorne*, 352 Ill. App. 3d 1062, 1078 (2004). We find the court followed the law here.

¶ 24                               C. Hearsay Statement

8

¶ 25        Finally, defendant argues the court erred in refusing to admit the hearsay testimony from defendant regarding what Peralis said to her after seeing the scratches on his neck. Defendant did not preserve this error and instead urges us to review the issue under either the plain error doctrine or for ineffective assistance of counsel where counsel did not argue the correct hearsay exception to the court.

¶ 26        "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The burden of persuasion to establish either prong rests with the defendant. *People v. Russell*, 409 Ill. App. 3d 379, 395 (2011). Defendant only argues for review pursuant to the first prong, under which defendant must prove the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against her. See *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). Further, regarding defendant's ineffective assistance of counsel argument, counsel renders ineffective assistance when (1) counsel's performance falls below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the results of the proceedings would have had a different outcome. *People v. Wise*, 2019 IL App (2d) 160611, ¶ 51.

> "Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial (see *People v. Herron*, 215 Ill. 2d 167, 178

9

(2005) (plain error)); or that there was a 'reasonable probability' of a different result *** (see *Strickland* [*v. Washington*, 466 U.S. 668, 694 (1984)])." *People v. White*, 2011 IL 109689, ¶ 133.

¶ 27 Here, even if we assume error, defendant cannot show prejudice for purposes of either analysis. See *id.* ¶ 134. Thus, "[t]here is no reason to go further for purposes of either an ineffective assistance analysis or one founded upon the closely balanced prong of plain error." *Id.* As we have already found, the evidence was sufficient to convict. Moreover, the court was aware defendant and Peralis had a tumultuous relationship. The court further recognized Peralis was not entirely credible. Additional evidence attacking Peralis's credibility, particularly hearsay evidence from defendant, who the court also found not credible, would not have impacted the verdict, as defense counsel had already established a motive for Peralis to lie about the incident to avoid deportation. The hearsay evidence had no impact on the court's major findings resulting in a guilty verdict, namely, that defendant followed Peralis into the bedroom where he sustained an injury, and she did not.

¶ 28                                                III. CONCLUSION

¶ 29 The judgment of the circuit court of Du Page County is affirmed.

¶ 30 Affirmed.